JAMES M. HORTON, Respondent, v. WILLIAM H. CHILDS, Appellant.

*Supreme Court, First Department, General Term, November 7, 1889.*

1. *Contract. Breach.*—A failure to perform a contract at the specified time, when time is of the essence, is a breach thereof.
2. *Same. Waiver.*—Subsequent willingness to accept performance does not extinguish the right of action.
3. *Same.*—The empowering of an attorney to determine as to the form of a lease does not authorize him to extend the time of performance.
4. *Same. Damages.*—The vendee's damages arising from loss of sale by reason of such non-performance, constitute a proper counterclaim against the vendor.

Appeal from judgment of foreclosure and sale.

*R. S. Newcombe*, for appellant.

*John M. Scribner*, for respondent.

VAN BRUNT, P. J.—On the 14th day of May, 1887, the plaintiff entered into a contract for the sale to the defendant of the property which is the subject of this foreclosure suit for the sum of $160,000, part of which was to be paid by a mortgage upon the premises in question. The property was in an open part of the city, and the streets were not clearly defined, and when the parties came together to close the contract the attorney for the purchaser objected to the title.

because it appeared by a recent survey of the premises that the car tracks of the Eighth Avenue Railroad Company were running across the property.

The attorney for the plaintiff to meet this objection exhibited a couple of letters bearing date the 3d of August, 1887, one from the secretary and treasurer of the railroad company, in which it is stated that the company had examined certain maps and from them it appeared that their tracks encroached on the land of the plaintiff, and if this was correct that they would remove the tracks at any time on thirty days' notice; and one from the plaintiff in reply to the secretary and treasurer of the company acknowledging the receipt of the letter of that date and stating its substance and concluding with the statement that he agreed to those terms, and accepted the corporation as a tenant at a nominal rent. These letters evidently not having been considered sufficient to constitute a lease between the Eighth Avenue Railroad Company and the plaintiff which could be enforced, the plaintiff gave to the defendant an instrument under seal reciting the fact that he had sold to the defendant a block of land upon which the tracks of the railroad company encroached, and that in consideration of the payment by the defendant of the purchase-price of the lands, the plaintiff agreed within thirty days thereafter either to obtain the execution by said railroad company of a lease of said premises in a form satisfactory to the defendant containing the privilege to the lessor to recover possession of the premises on thirty days notice or to have the tracks entirely removed from the lands; and in said agreement the plaintiff expressly covenanted and agreed to indemnify and save harmless the said defendant of and from all loss and damage from the encroachment of said tracks, including loss of profits in any future transaction in respect to said lands.

The title to the property was then closed by one Childs, to whom the defendant has assigned the contract, executing a bond and mortgage for part of the purchase-money, the

cash required by the contract being paid by the defendant and a deed duly executed and delivered by the plaintiff to the defendant Childs. Mr. Childs in this transaction was simply acting for Mr. Bauer and upon the next day conveyed the premises to him subject to the purchase-money mortgage. At the time of closing the contract the defendant Bauer spoke to the plaintiff's attorney respecting the form of the lease that might be proposed to be executed by the railroad company and told the attorney to endeavor to get a lease that would satisfy his attorney, Mr. Beers, a more formal one than the documents produced, referring to the letters, and to take his instructions from Mr. Beers.

Up to the 25th of January, 1888, no lease had been secured, and the defendant wrote to his attorney, Mr. Beers, stating that he was entitled to a lease dated back, and obligations and conditions in said lease to commence to be in force thirty days after the title was closed in accordance with Mr. Horton's bond of indemnity for the same, and that it was sufficient if the lease was made between the company and Mr. Childs, the owner of record. On the next day Mr. Beers wrote to Mr. Waite, the counsel for the plaintiff, stating that he would be glad to see the form of the lease before he submitted it to the company. Afterwards, on or about the 1st of March, 1888, Mr. Waite presented a form of lease to Mr. Beers, in which proposed lease some changes were made by Mr. Beers. The next we hear of this matter is on the 8th of March, when Beers wrote to Waite, as follows: " I would suggest that you do not finally submit to the railroad company the proposition for a lease until I can hear from Mr. Bauer, to know if he is willing or not to take a lease at a substantial rent."

On the day preceding this last letter, Mr. Bauer had entered into a contract to sell to a man by the name of Borger, at a price largely in advance of that at which the premises had been bought by the defendant, and upon the maturity of this contract Borger declined to take title solely because of

28

encroachment of the tracks thereon.  Subsequently, Bauer
not having paid the interest upon the bond and mortgage,
the plaintiff commenced this action to foreclose the mortgage,
and defendant, amongst other things, set up as a counter-
claim the damages sustained by reason of the loss of Borger
as a purchaser.  The learned court below decided that this
counterclaim could not prevail because it was Beers' act in
seeking delay that prevented Waite from proceeding with
the negotiations he was then carrying on with the railroad
official sand because it could not be disputed, had the lease
been signed before the rejection of the title, that the plaintiff
would have done all that was required of him by the agree-
ment, the element of time being waived by the clear under-
standing of the parties as shown by the correspondence.

In this conclusion we think that the learned court com-
mitted a fatal error.  That time was of the essence of this
contract in regard to the removal of this encroachment
appears clearly upon the face of the contract.  Neither
Bauer nor Childs, his representative, could have been com-
pelled to take title under the contract with these railroad
tracks upon the land.  They were entitled upon delivery of
the deed to immediate possession of the whole and every
part of the premises conveyed.  The plaintiff could not give
possession, and knew that he could not, and in order to
induce Bauer to close the contract he made this instrument
under seal, which is in the nature of an indemnity, by which
he agreed to hold Bauer harmless from any damage which he
might sustain by reason of those tracks being there.  It was
not intended that the matter should remain open for any
length of time, because the plaintiff agreed to do one of two
things within thirty days, either to procure a lease or to
have the tracks removed.  In other words, to remove this
incumbrance from the property.  That was to be done within
thirty days, and, in addition, to indemnify Bauer and hold
him harmless from any loss or damage which might arise.
This evidently applied to the term of thirty days, because if

he kept the first part of his agreement, then Bauer could not sustain any damage whatever by reason of the existence of these tracks, because either he would have given a lease to the railroad company to keep the tracks there, or they would have been removed ; the object also being, undoubtedly, to recognize the superior title of the landlord, so that there would be no difficulty in taking summary proceedings to oust the company upon the terms contained in the agreement or lease. Therefore, when the plaintiff allowed the thirty days to expire, and the lease had not been obtained nor the tracks removed, he was in default.

We have searched the record in vain to find any waiver of this default. It is true that as late as the 25th or 26th of January, Bauer signified his willingness to take the lease, but he could not have been compelled to take it. A man may be willing to do a thing when he cannot be compelled to do it. The plaintiff was not in a position to compel him to take the lease to relieve himself from the penalties contained in the instrument under seal.

The only point then, upon which the waiver of Horton's default can hinge, is the letter of Beers, of the 8th of March, in which he directs Waite not to finally submit the lease to the railroad company until he could hear from Bauer to know whether or not he was willing to take a lease at a substantial rent. This letter was an express recognition that Mr. Beers had not the authority to act. He was simply the attorney of Bauer for the purpose of determining as to the form of the lease, and although the learned counsel for the respondent claims that Bauer told Waite he was to take all his instructions from Beers in adjusting the lease matter, we fail to find any evidence tending to sustain any such proposition. The evidence to which reference is made is simply a reference to Mr. Beers as to the form of the lease. Waite's testimony is : " He told me to endeavor to get a lease that would satisfy Beers, a more formal one than the documents then produced ; to take my instructions from Mr. Beers."

It certainly would be stretching of the words far beyond their elasticity to say that under such an authority Waite had any right to suppose that Beers had the authority from Bauer to waive any of the rights which he had acquired under the instrument in writing under seal which he had obtained from Horton.

At the time of the writing of this letter Horton had been long in default, and there was nothing throughout the whole of this transaction which authorized Waite or Horton to suppose that Beers had the right to release Horton from the performance of his contract or waive any rights which Bauer had acquired by reason of the default.

It is claimed by the learned court below, in its decision, that it would be unconscionable to allow Bauer to permit this contract to be extended and then to claim the default. There does not seem to have been presented upon the face of this record any reason for this undue delay upon the part of the plaintiff. He was anxious to have the defendant, Bauer, take this title. He was willing enough then, in order to get rid of the property and obtain Bauer's cash, to make all sorts of promises. But he seems to have been exceedingly slow in fulfilling the obligation entered into in the most solemn manner.

It does not seem to us that rights acquired under an instrument under seal can be disposed of in this way by an attorney who is simply to determine as to the form of a lease and who has no further or other authority. As already stated, upon the face of this letter Mr. Beers informs Mr. Waite that he has not the authority to act except upon further instructions from Mr. Bauer. He had no other authority than to settle the form of the lease which was to carry out the provisions of the letters between Horton and the railroad company. The court below properly held that the letters did not constitute a lease. It was so understood by the parties, because the letters were there present, and if they had been considered sufficient, the agreement in regard

to the lease was not necessary. It was clear they had in contemplation something more formal upon which Bauer could rely, and until the plaintiff procured that he had not performed his contract, and there is nothing to show that Bauer in any way extended the time to the plaintiff to perform, any more than by being willing some months after the term limited in the contract had expired to accept a lease. We do not think that there was anything whatever in the authority conferred by Bauer upon Beers, so far as this evidence shows, which justified the conclusion that he had any authority to waive any default made by the plaintiff in respect to the terms of this agreement under seal.

It is found by the court that the contract between Borger and Bauer was made in good faith; and it is evident that the reason why the judgment was rendered against him was because the court was of the opinion that Beers had the authority to waive rights which the defendant had acquired by reason of his agreement under seal with the plaintiff.

Under these circumstances, we think the court took an erroneous view of the legal rights of these parties and that the judgment must be reversed and a new trial ordered, with costs to appellant to abide event.

DANIELS and BRADY, JJ., concur.

## NOTE ON " TIME AS OF THE ESSENCE OF THE CONTRACT."

The time of closing a contract for the sale of land, when clearly and distinctly expressed in the contract itself, though not expressly stated as being of the essence of the contract, may be made so by the distinct demand of either party, that the express terms of the contract in that respect be performed. Schmitt *v.* Reed, 58 Supr. 570.

A party in electing to make time the essence of the contract, must give the other reasonable notice, when there have been several adjournments of the period for closing the transaction. Cordes *v.* Kenney, 55 Hun, 605.

The purchaser is entitled to insist upon the performance at the time specified in the contract of sale, and is not bound to wait for the removal of incumbrances affecting the title. Oppenheimer *v.* Humphreys, 56 Hun, 649.

Where, by the terms of a contract to excavate certain lots, time was to be

of the essence of the contract, and the failure of the contractor to complete the work within the time limited should defeat his right to recover anything under the agreement, the other party, upon the contractor's failure to perform within the limited time, had a right to insist upon his strict legal rights and then put an end to the contract. Dunn v. Steubing, 120 N. Y. 232. But if he did not do so but permitted the contractor to continue and finish the work he could not insist on the delay as a defense to an action brought to recover the price of the work. Id.

Where parties have made time an essence of the contract, they will be held to an observance of the same. Baumann v. Pinkney, 14 Daly, 241; Hubbell v. Von Schoening, 49 N. Y. 326; Babcock v. Emrich, 64 How. 435.

Time, in the performance of an agreement either for the sale or purchase of real property, is always material. Hubbell v. Von Schoening, ante. A court of equity will not, any more than a court of law, excuse laches and gross negligence in the assertion of a right to a specific performance. Id. But time is not of the essence of the contract, unless made so by the terms of the contract. Id.

Though there may not, when time has not been made essential, be performance at the day, the court will, if the delay is excused, the situation of the parties, or of the property is not changed so that injury will result, and the party is reasonably diligent, relieve him from the consequences of the delay and grant a specific performance. Id.

Though time is not usually the essence of a contract for the sale of real estate, the parties can always make it so. Babcock v. Emrich, 64 How. 435.